Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISS LAW**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN BUSHANSKY, | Case No._____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| IMAGO BIOSCIENCES, INC., DENNIS HENNER, ROBERT BALTERA, DINA CHAYA, ENOCH KARIUKI, HUGH Y. RIENHOFF, JR., and LAURIE KEATING, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1.     Plaintiff brings this action against Imago BioSciences, Inc. ("Imago" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78t(a), and to enjoin the expiration of a tender offer (the "Tender Offer") on a proposed transaction, pursuant to which Imago will be acquired by Merck & Co., Inc. through its subsidiaries, Merck Sharp & Dohme LLC ("Parent"), and Parent's wholly-owned subsidiary M-Inspire Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On November 21, 2022, Imago and Merck issued a joint press release announcing entry into an Agreement and Plan of Merger, dated as of November 19, 2022 (the "Merger Agreement"), to sell Imago to Merck.  Under the terms of the Merger Agreement, Imago stockholders will receive $36.00 in cash for each share of Imago common stock (the "Offer Price").  Pursuant to the Merger Agreement, Merger Sub commenced the Tender Offer on December 12, 2022.  The Tender Offer is scheduled to expire at one minute after 11:59 p.m., Eastern time, on January 10, 2023.  The Proposed Transaction is valued at approximately $1.35 billion.

3.     On December 12, 2022, Imago filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") with the SEC.  The Recommendation Statement, which recommends that Imago stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Imago management's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Centerview Partners LLC ("Centerview"); and (iii) Imago insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Recommendation Statement in violation of Sections 14(e) and 20(a) of the Exchange Act.

- 2 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4. In short, the Proposed Transaction will unlawfully divest Imago's public stockholders of the Company's valuable assets without fully disclosing all material information concerning the Proposed Transaction to Company stockholders. To remedy defendants' Exchange Act violations, Plaintiff seeks to enjoin the expiration of the Tender Offer unless and until such problems are remedied.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Imago is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Imago.

9. Defendant Imago is a Delaware corporation with its principal executive offices located at 303 Twin Dolphin Drive, 6th Floor, Redwood City, California 94065. Imago provides health navigation solutions for employers and health plan customers in the education, manufacturing, retail,

- 3 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

government, and technology industries in the United States. Imago's common stock is traded on the Nasdaq Global Select Market under the ticker symbol "IMGO."

10. Defendant Dennis Henner ("Henner") is Chairman of the Board and has been a director of the Company since October 2014.

11. Defendant Robert Baltera ("Baltera") has been a director of the Company since April 2020.

12. Defendant Dina Chaya ("Chaya") has been a director of the Company since March 2019.

13. Defendant Enoch Kariuki ("Kariuki") has been a director of the Company since January 2021.

14. Defendant Hugh Y. Rienhoff, Jr. ("Rienhoff") has been Chief Executive Officer ("CEO") and a director of the Company since its founding in March 2012.

15. Defendant Laurie Keating ("Keating") has been a director of the Company since November 2021.

16. Defendants identified in paragraphs 10 to 15 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

17. Merck is a global health care company that delivers innovative health solutions through its prescription medicines, vaccines, biologic therapies, and animal health products. Merck's operations are principally managed on a products basis and include two operating segments, which are the Pharmaceutical and Animal Health segments, both of which are reportable segments. The Pharmaceutical segment includes human health pharmaceutical and vaccine products. Human health pharmaceutical products consist of therapeutic and preventive agents, generally sold by prescription, for the treatment of human disorders. Merck sells these human health pharmaceutical products

primarily to drug wholesalers and retailers, hospitals, government agencies and managed health care providers such as health maintenance organizations, pharmacy benefit managers and other institutions. The Animal Health segment discovers, develops, manufactures, and markets a wide range of veterinary pharmaceutical and vaccine products, as well as health management solutions and services, for the prevention, treatment, and control of disease in all major livestock and companion animal species.

18. Merger Sub is a Delaware corporation and wholly-owned subsidiary of Merck.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

19. Imago is a clinical-stage biopharmaceutical company discovering and developing novel small molecule product candidates that target lysine-specific demethylase 1 ("LSD1"), an enzyme that plays a central role in the production of blood cells in the bone marrow. Imago is focused on improving the quality and length of life for patients with cancer and bone marrow diseases. Bomedemstat, an orally available, small molecule inhibitor of LSD1, is the lead product candidate discovered by Imago for the treatment of certain myeloproliferative neoplasms ("MPNs"), a family of related, chronic cancers of the bone marrow. Imago is evaluating Bomedemstat as a potentially disease-modifying therapy in two Phase 2 clinical trials for the treatment of essential thrombocythemia (NCT04254978) ("ET") and myelofibrosis (NCT03136185) ("MF"). Bomedemstat has U.S. FDA Orphan Drug and Fast Track Designation for the treatment of ET and MF, European Medicines Agency Orphan Designation for the treatment of ET and MF, and PRIority MEdicines Designation by the EMA for the treatment of MF.

20. On November 9, 2022, the Company announced its third quarter 2022 financial results. On November 3, Imago announced that an abstract entitled "A Phase 2 Study of the LSD1 Inhibitor Bomedemstat (IMG-7289) for the Treatment of Essential Thrombocythemia (ET)" had been accepted

for an oral presentation on December 12, 2022, at the ASH Annual Meeting. A second abstract entitled "A Phase 2 Study of the LSD1 Inhibitor Bomedemstat (IMG-7289) for the Treatment of Advanced Myelofibrosis (MF): Updated Results and Genomic Analyses" will be presented as a poster. During the quarter, Imago advanced important study start-up activities for both the Bomedemstat pivotal Phase 3 ET and Phase 2 PV trials, including submission of both protocols to the U.S. Food and Drug Administration (FDA) for review. The Company anticipates initiation of both studies in early 2023. Reflecting on the Company's results and looking to the future, defendant Rienhoff commented:

> Imago continues to make progress in the clinical development of Bomedemstat for the treatment of MPNs including essential thrombocythemia (ET), polycythemia vera (PV) and myelofibrosis (MF). Enrollment in the ongoing Phase 2 ET study is complete and all patients remaining on study will have been treated for 24 weeks by year end. Imago has announced positive data for Bomedemstat in the treatment of ET and MF and will present additional data in an oral presentation for ET and a poster for MF at the ASH Annual Meeting on December 12, 2022. In addition, start-up activities continue to progress nicely for our planned Bomedemstat pivotal Phase 3 ET and Phase 2 PV trials, and we expect the investigator-sponsored study of Bomedemstat in combination with ruxolitinib for the treatment of MF to begin enrolling patients in the coming weeks.

**The Proposed Transaction**

21. On November 21, 2022, Imago and Merck issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> RAHWAY, N.J. & SOUTH SAN FRANCISCO, Calif.--(BUSINESS WIRE)--Nov. 21, 2022-- Merck (NYSE: MRK), known as MSD outside the United States and Canada, and Imago BioSciences, Inc. ("Imago") (Nasdaq: IMGO) today announced that the companies have entered into a definitive agreement under which Merck, through a subsidiary, will acquire Imago for $36.00 per share in cash for an approximate total equity value of $1.35 billion.
>
> "We continue to invest in our pipeline with a focus on applying our unique capabilities to unlock the value of breakthrough science for the patients we serve," said Robert M. Davis, president and chief executive officer, Merck. " This acquisition of Imago augments our pipeline and strengthens our presence in the growing field of hematology."

- 6 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Imago is a clinical stage biopharmaceutical company developing new medicines for the treatment of myeloproliferative neoplasms (MPNs) and other bone marrow diseases. Imago's lead candidate bomedemstat (IMG-7289), an investigational orally available lysine-specific demethylase 1 (LSD1) inhibitor, is currently being evaluated in multiple Phase 2 clinical trials for the treatment of essential thrombocythemia (ET), myelofibrosis (MF), and polycythemia vera (PV), in addition to other indications.

"This milestone is a testament to more than a decade of pioneering research by Imago scientists and the entire Imago team's unwavering dedication to improving the lives of patients," said Dr. Hugh Y. Rienhoff, Jr., Founder and Chief Executive Officer, Imago BioSciences. "This agreement leverages Merck's industry-leading clinical development expertise to maximize the therapeutic potential of bomedemstat while providing important value for shareholders. I would also like to acknowledge with gratitude the early investors – Blackstone Life Sciences, Frazier Healthcare, Omega Funds, Amgen Ventures, and MRL Ventures Fund who placed their faith in Imago beginning in 2014, as well as the outstanding study investigators and their patients who have made the clinical development of bomedemstat possible."

"Evidence indicates that LSD1 plays an important role in the maturation of blood cells in the bone marrow," said Dr. Dean Y. Li, president, Merck Research Laboratories. "We look forward to working with the Imago team to further investigate the potential of bomedemstat for patients with myeloproliferative neoplasms."

Under the terms of the acquisition agreement, Merck, through a subsidiary, will initiate a tender offer to acquire all outstanding shares of Imago. The closing of the tender offer will be subject to certain conditions, including the tender of shares representing at least a majority of the total number of Imago's outstanding shares, the expiration of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions. Upon the successful completion of the tender offer, Merck's acquisition subsidiary will be merged into Imago, and any remaining shares of common stock of Imago will be canceled and converted into the right to receive the same $36 per share price payable in the tender offer. The transaction is expected to close in the first quarter of 2023.

**Myeloproliferative neoplasms**
Myeloproliferative neoplasms are a group of diseases of the bone marrow characterized by excessive production of red blood cells, platelets, or certain white blood cells. Myeloproliferative neoplasms progress over time as the number of extra cells build up in the blood and/or bone marrow. This may lead to bleeding problems, anemia, infection, fatigue, thrombosis or other signs and symptoms. Certain myeloproliferative neoplasms may become acute myeloid leukemia (AML). Myeloproliferative neoplasms include chronic myelogenous leukemia (CML), polycythemia vera, primary myelofibrosis, essential thrombocythemia, chronic neutrophilic leukemia, and chronic eosinophilic leukemia.

**About lysine-specific demethylase 1 (LSD1)**

LSD1, also called KDM1A, discovered in 2004, is a member of a group of epigenetic proteins that regulate gene expression through chemical modifications of proteins, RNA and DNA.  LSD1 regulates the maturation of bone marrow stem cells and is essential for the differentiation of progenitor cells into mature megakaryocytes and granulocytes and production of blood cells.  Given the role that LSD1 plays in the function of malignant blood cells, targeting LSD1 for the treatment of blood cancers offers a new mechanism for the treatment of diseases associated with high morbidity and mortality.

*** 

**Advisors**

Morgan Stanley & Co. LLC acted as financial advisor to Merck in this transaction and Gibson Dunn & Crutcher LLP as its legal advisors.  Centerview Partners LLC acted as financial advisor to Imago and Latham and Watkins LLP as its legal advisors.

**Insiders' Interests in the Proposed Transaction**

28.     Imago insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Imago.

29.     Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Merck.  The following tables set forth the cash payments the Company's executive officers and directors will receive in connection with tendering of their shares in the Tender Offer:

| Officer Name[1] | Number of Shares Owned (#) | Cash Consideration Payable in Respect of Shares ($) |
|---|---|---|
| Hugh Y. Rienhoff, Jr., M.D (1). | 489,526 | 17,622,936 |
| Laura G. Eichorn | 207,737 | 7,478,532 |
| Michael H. Arenberg, J.D., M.B.A. | 0 | 0 |
| Jennifer Peppe | 148,809 | 5,357,124 |
| Amy E. Tapper, Ph.D. | 119,047 | 4,285,692 |
| Hsiangyi Chiang, M.S., CPA. | 5,000 | 180,000 |

| Director Name | Number of Shares Owned (#) | Cash Consideration Payable in Respect of Shares ($) |
|---|---|---|
| Dennis Henner, Ph.D. | 26,095 | 939,420 |
| Robert Baltera, M.S (2) | 850 | 30,600 |

30. Moreover, upon consummation of the Proposed Transaction, all vested and unvested Company options will be converted into the right to receive cash payments. The following tables set forth the cash payments that Imago insiders will receive in connection with their Company options upon consummation of the merger:

| Officer Name | Number of Shares Subject to Vested Company Options (#) | Weighted Average Exercise Price per Share (Vested Company Options) ($)(1) | Cash Consideration for Vested Company Options ($) | Number of Shares Subject to Unvested Company Options (#) | Weighted Average Exercise Price per Share (Unvested Company Options) ($)(1) | Cash Consideration for Unvested Company Options ($) | Total Cash Consideration for Company Options in Merger ($) |
|---|---|---|---|---|---|---|---|
| Hugh Y. Rienhoff, Jr., M.D. | 860,231 | 4.72 | 26,908,005 | 920,594 | 12.37 | 21,750,420 | 48,658,425 |
| Laura G. Eichorn | 188,744 | 5.18 | 5,816,486 | 209,827 | 16.36 | 4,120,210 | 9,936,695 |
| Michael H. Arenberg, J.D., M.B.A. | 0 | N/A | 0 | 474,000 | 17.79 | 8,631,410 | 8,631,410 |
| Jennifer Peppe | 127,734 | 6.15 | 3,812,318 | 211,743 | 15.40 | 4,362,257 | 8,174,575 |
| Amy E. Tapper, Ph.D. | 140,641 | 5.73 | 4,257,644 | 211,743 | 15.40 | 4,362,257 | 8,619,901 |
| Hsiangyi Chiang, M.S., CPA | 45,056 | 6.62 | 1,323,741 | 176,091 | 11.90 | 4,243,199 | 5,566,940 |

| Director Name | Number of Shares Subject to Vested Company Options (#) | Weighted Average Exercise Price per Share (Vested Company Options) ($)(1) | Cash Consideration for Vested Company Options ($) | Number of Shares Subject to Unvested Company Options (#) | Weighted Average Exercise Price per Share (Unvested Company Options) ($)(1) | Cash Consideration for Unvested Company Options ($) | Total Cash Consideration for Company Options in Merger ($) |
|---|---|---|---|---|---|---|---|
| Dennis Henner, Ph.D. | 0 | N/A | 0 | 11,904 | 15.65 | 242,246 | 242,246 |
| Robert Baltera, M.S. | 84,254 | 3.48 | 2,740,077 | 65,534 | 7.10 | 1,893,403 | 4,633,480 |
| Dina Chaya, Ph.D. | 10,581 | 16.00 | 211,620 | 25,132 | 15.83 | 506,806 | 718,426 |
| Enoch Kariuki, Pharm.D. | 62,663 | 6.19 | 1,867,828 | 92,097 | 7.37 | 2,636,293 | 4,504,121 |
| Laurie Keating, J.D. | 7,936 | 22.76 | 105,073 | 27,777 | 19.71 | 452,405 | 557,478 |

**The Recommendation Statement Contains Material Misstatements or Omissions**

31. The defendants filed a materially incomplete and misleading Recommendation Statement with the SEC and disseminated it to Imago's stockholders. The Recommendation Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal.

32. Specifically, as set forth below, the Recommendation Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Imago management's financial projections; (ii) the data and inputs

underlying the financial valuation analyses that support the fairness opinion provided by Centerview; and (iii) Imago insiders' potential conflicts of interest.

**Material Omissions Concerning Imago's Financial Projections**

33. The Recommendation Statement omits material information regarding the Company's financial projections.

34. For example, with respect to the Company's financial projections, the Recommendation Statement sets forth:

> These financial projections were prepared in November 2022 by Imago management based on assumptions about Imago's continued operation as a stand-alone, publicly traded company, with respect to the development and commercialization of Imago's products and assumptions regarding Imago's potential future collaborations with third parties. The projections reflected a risk-adjusted outlook, based on certain internal judgments and assumptions prepared by Imago management about the probability of success for Imago's products, including the indications pursued, launch timing, epidemiology, pricing, sales ramp, market share, market exclusivity, research and development expenses, sales and marketing expenses, general and administrative expenses, effective tax rate and utilization of net operating losses, ability to enter future partnering or licensing agreements, ability to raise future capital, including the impact of the cost associated with future capital raises, and other relevant factors related to Imago's long-range operating plan..

Recommendation Statement at 24. The Recommendation Statement fails, however, to disclose management's estimate of the probability of success for Imago's products.

35. Additionally, the Recommendation Statement fails to disclose the un-risked projections so Imago stockholders can evaluate the financial impact the Company's risk-adjustments had on the projections.

36. The omission of this information renders the statements in the "Certain Financial Projections" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

**Material Omissions Concerning Centerview's Financial Analyses**

37. The Recommendation Statement describes Centerview's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Imago's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Centerview's fairness opinion in determining whether to tender their shares in the Proposed Transaction or seek appraisal.

38. With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rate range of 13.5% to 15.5%; (ii) quantification of the Company's terminal values derived in the analysis; and (iii) the fully diluted shares outstanding of Imago.

39. The omission of this information renders the statements in the "Opinions of Imago's Financial Advisor" section of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Company Insiders' Potential Conflicts of Interest*

40. The Recommendation Statement fails to disclose material information concerning the potential conflicts of interest faced by Company insiders.

41. For example, the Recommendation Statement fails to disclose whether any of Merck's proposals for an acquisition of the Company communicated the potential for management to be retained by the combined company following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation for current Imago insiders.

42. The omission of this information renders the statements in the "Background of the Offer and Merger" and "Interests of Imago Executive Officers and Directors" sections of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

43. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Recommendation Statement. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff and the other Imago stockholders will be unable to make an informed decision whether to tender their shares in the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act

44. Plaintiff repeats all previous allegations as if set forth in full.

45. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made untrue statements of material facts or failed to state all material facts necessary to make the statements made, considering the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Tender Offer commenced in conjunction with the Proposed Transaction.

46. Defendants knew that Plaintiff would rely upon their statements in the Recommendation Statement in determining whether to tender his shares pursuant to the Tender Offer commenced in conjunction with the Proposed Transaction.

47. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether to tender his shares.

# COUNT II

### Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

48. Plaintiff repeats all previous allegations as if set forth in full.

49. The Individual Defendants acted as controlling persons of Imago within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Imago and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

50. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

52. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and

information that they reviewed and considered — descriptions which had input from the Individual Defendants.

53. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Imago, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: December 19, 2022

**WEISS LAW**
Joel E. Elkins

By: /s/ Joel E. Elkins

Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone:  310/208-2800
Facsimile:   310/209-2348
-and-
Michael Rogovin
476 Hardendorf Ave. NE
Atlanta, GA 30307
Telephone: 404/692-7910
Facsimile:  212/682-3010

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS